UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN P. STIVERS,<br><br>                              Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN<br>Acting Commissioner of Social Security,<br><br>                              Defendant. | 3:15-cv-00270-BAS-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. Nos.12, 19) |

## I.    INTRODUCTION

Plaintiff Robin P. Stivers ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the decision of the Social Security Administration ("Defendant") to deny her claims for disability insurance benefits and for supplemental security income benefits.   This case was referred for a report and recommendation on the parties' cross motions for summary judgment.  *See* 28 U.S.C. § 636(b)(1)(B).  After carefully considering the papers submitted, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal and/or remand be **GRANTED** and **REMANDED** for additional

proceedings, and that Defendant's cross motion for summary judgment be **DENIED**.

## II.     BACKGROUND

### a.  Procedural History

On July 4, 2011, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income benefits.[1]   Administrative Record ("AR") 72, 175-80, 181-89, 190-91.  She alleged her disability began on June 1, 2009.  AR 177, 181, 190.

The Social Security Administration initially denied Plaintiff's applications on March 22, 2012, and denied them again upon reconsideration on May 29, 2012.  AR 121-25, 130-35.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 136-37.

On October 24, 2013, the ALJ held a hearing.  AR 29.  The ALJ issued a decision on November 15, 2013, denying Plaintiff's applications on grounds she was not disabled.  AR 104-15.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision became final.  AR 1-6, 12-14.

Plaintiff filed this Complaint for judicial review.  (Dkt. No. 1.)  She asks the Court to reverse the ALJ's decision and award benefits or alternatively to remand for further proceedings.  (Dkt. No. 12 at 2.)

### b.  Documentary Medical Evidence

#### i.  State Agency Physician Opinions

State Agency physician Pamela Ombres, M.D., reviewed Plaintiff's medical records at the initial level.  AR 48-71.  On February 27, 2012 and on March 8, 2012, Dr. Ombres opined Plaintiff is capable of a duration to light Residual Functional Capacity ("RFC") as written, which was to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; to stand or walk for 6 hours in an 8-hour workday; and sit for 6 hours in

---

[1] Because the disability insurance benefits ("DIB") Code of Federal Regulations are virtually identical to the supplemental security income Regulations, the parties cite to the DIB citations only throughout their briefs.  *See* Dkt. Nos. 12, 19-1 at 5, fn.1.  The Court does so here as well.

an 8-hour workday.  AR 55.  Dr. Ombres opined Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, but should never climb ladders, ropes or scaffolds.  Id.  She opined Plaintiff would have limited reaching, handling, fingering and feeling.  AR 56.  Dr. Ombres also opined Plaintiff could perform frequent handling and occasional fingering.  Id.  On May 25, 2012, State Agency physician G. Taylor-Holmes, M.D. affirmed Dr. Ombres' findings.  AR 80.

### ii.  Treating Physician George C. Fareed, M.D.

On June 22, 2009, treating physician Dr. Fareed examined Plaintiff and reported that Plaintiff was "generally active and in satisfactory or normal health."  AR 274-75.  Plaintiff complained of abdominal pain, body aches, and fever symptoms.  AR 274.  Dr. Fareed noted that Plaintiff had no recent hospitalizations for major illnesses, accidents, surgeries, or injuries.  Id.  Upon examination, Plaintiff's neck was supple; her abdomen was non-tender with no organomegaly; her musculoskeletal system was essentially unchanged or stable; her back had no CVA (costovertebral angle) or spot tenderness; and her neurological examination was non-focal with motor and sensory systems intact or unchanged.  AR 274-75. Dr. Fareed also reported that Plaintiff's gait and balance were normal.  AR 275.

On February 22, 2011, Dr. Fareed again examined Plaintiff.  His examination findings were largely the same as before, but he also noted a few additional diagnoses of leg pain and neuropathy.  AR 279-80.  Dr. Fareed's April, August, and September 2011 examination findings were essentially the same.  AR 282-83; 284-86; 287-88; 290-92.  His December 2011 findings were also essentially the same, though he added a diagnosis of paresthesia (tingling) in the left arm and fingers.  AR 565-67.

On February 22, 2012, Dr. Fareed again saw Plaintiff.  His findings were essentially the same as before, though he added impressions and diagnoses of cervical spondylosis with myelopathy (compressional of the spinal cord), and disc displacement.  AR 569-70. Dr. Fareed's October 25, 2012 examination notes indicate Plaintiff was evaluated for the same diagnoses listed in the February 2012 notes.  He also again noted no recent hospitalizations for major illnesses, accidents, surgeries or injuries, noted as being

"generally active and in satisfactory or normal health."  AR 574.  Her musculo-skeletal system was noted as "unremarkable and essentially unchanged/stable."  AR 575.  Her neurological exam showed it was "non-focal with motor and sensory systems intact or unchanged from before.  Gait and balance are normal."  AR 575.

On January 7, 2013, Plaintiff saw Dr. Fareed for complaints pertaining to bronchitis.  AR 577-78.  On May 16, 2013, Plaintiff again saw Fareed for complaints pertaining to gastrointestinal hemorrhage and blood clots in the stool.  AR 580-81.  Dr. Fareed noted that her neck was supple, that her musculo-skeletal system is unremarkable and essentially unchanged/stable.   Her back was without CVA or spot tenderness.  He also noted her motor and sensory systems were intact or unchanged from before, and her gait and balance were normal.  AR 581.

### iii.  Neurologist Sayed Monis

On July 6, 2010, Neurologist Sayed Monis, M.D. evaluated Plaintiff for her complaints of low back pain and neck pain.  Summary notes from Dr. Monis' consultation report stated low back radiation to B/L lower extremities with some sensory loss and diminished reflexes of knees and ankles; tenderness in the lower back area; a positive facet loading test; neck pain radiation to B/L; consistent exam findings with diminished pin prick and temperature sensation and B/L upper extremities; B/L intrinsic hand muscle weakness, tenderness in the upper back and diminished reflexes in the UE; as well as B/L diffuse hand and feet diminished sensation and diminished sensation on the right side of the face and right upgoing plantar.  Dr. Monis diagnosed Plaintiff with differential diagnoses of lumbar degenerative disc disease with radiculopathy; cervical degenerative disc disease with radiculopathy; R/O intracranial lesion or metastasis, and facet joint disease or arthritis.  AR 383.  She recommended a nerve conduction study and electromyogram ("EMG") of the lower extremities.  Id.

### iv.  Oncologist Hasnat Ahmed

On June 7, 2011, Plaintiff was seen by oncologist Hasnat Ahmed, M.D.  The doctor noted she had neuropathy that primarily affected her feet but ambulated normally.  Plaintiff

was alert and comfortable and had a supple neck.  He noted that her carpal tunnel surgery resulted in improved strength in her hand and grip, and that she had a 5/5 wrist strength. AR 327.  On December 6, 2011, Dr. Ahmed again examined Plaintiff.  Plaintiff complained of peripheral neuropathy in the feet, and pain in her feet.  Upon physical examination, he noted she was ambulating normally, her neck was supple, her grip strength was good and power was 5/5 in all four limbs, and there was no tenderness on percussion of the vertebral column.  AR 539-40.

Approximately one year later on January 9, 2013, Dr. Ahmed again saw Plaintiff. Upon physical examination, he noted her neck as supple, and power was 5/5 in all four limbs.  AR 545.   He also assessed that she had sensory neuropathy in the feet.  Id.

### v.  Dr. Charles Stevens

Dr. Fareed referred Plaintiff to see Charles Stevens, M.D. of Advanced Pain Associates.  *See* AR 506, 609.  Plaintiff saw Dr. Stevens on May 17, 2012; she complained of pain located in her neck and both arms, and the pain was constant and aching and sharpshooting, numbing and tingling.  Upon physical examination, the doctor noted Plaintiff ambulated with a slowed gait but had a normal heel and toe walk; she had a full normal forward flexion and left and right lateral flexion.  He also noted a negative straight leg-raise bilaterally and 5/5 strength in the upper extremities with a full range of motion of her bilateral upper extremities.  From her upper extremities she also had a positive Spurling's sign (pain assessment in the neck) bilaterally.   He also noted a normal range of motion and intact sensation reflexation in her lower extremities.  Dr. Stevens diagnosed Plaintiff with malignant neoplasm of the breast; unspecified essential hypertension; unspecified idiopathic peripheral neuropathy; brachia-neuritis or radiculitis not otherwise specified; and spinal stenosis in the cervical region.  AR 506-09.

On October 5, 2012, Plaintiff again saw Dr. Charles Stevens.  Plaintiff complained of cervical and lumbar spine pain; hip, knee and ankle/foot pain in the joints; and of pain in both upper extremities and her lower right extremity.  AR 601.  Physical examination notes indicated no muscle tenderness in the spine, though a limited range of motion in all

directions and a positive Spurling's bilaterally; for the lumbosacral spine there were trigger points at mid-quadrant of the buttocks, nontender musculature, moderate pain with extension/axial loading and minimal discomfort with lateral bending, a limited range of motion in all directions, normal muscle strength and tone, and a straight leg raise test was positive on the right. Upper and lower extremities were noted as having a range of motion appropriate with age and/or no limitation on the range of motion, no pain with the range of motion, and no tenderness. Her gait and station were noted as ataxic gait–right, and she was able to stand without difficulty and ambulate without the assistance of orthosis. The assessment findings were myalgia and myositis, unspecified; muscle spasm; lumbago; spondylosis without myelopathy; chronic pain syndrome; lumbar radiculitis; lumbar degenerative disc disease; and lumbar spinal stenosis. Dr. Stevens noted Plaintiff had low back pain on the right that was greater than on the left, along with right leg radicular pain in an LS/S1 distribution along with associated paresthesias (abnormal tingling). Dr. Stevens ordered an MRI of the lumbar spine and physical therapy. AR 606-07. In November 2012, Dr. Stevens reviewed Plaintiff's MRI and referred her to a neurology consult for an EMG/NCV. AR 609. A progress note from Dr. Charles Stevens dated December 20, 2012, indicates largely the same physical examination findings, though myofascial pain was added to the assessment. AR 617-622.

On January 28, 2013, Plaintiff again saw Dr. Stevens. The physical examination findings were largely the same, though Dr. Stevens noted pain with range of motion in the right ankle/foot. He also reviewed Plaintiff's EMG/NCV and noted it showed right L4/L5 and LS/SI radiculopathy with an MRI that showed minimal pathology. AR 624-629. A few weeks later on February 8, 2013, Plaintiff again saw Dr. Stevens. Plaintiff complained that her medication gave her headaches as she was dizzy and unable to "function." Physical examination was largely the same, though she was noted to have a trigger point at the anterior aspect of the interspaces between the transverse processes of C5-C7 (bilateral) and paraspinal muscle tenderness in the lumbosacral spine. Dr. Stevens decreased her medication. AR 631-37. In April, May, and June of 2013, Plaintiff continued to visit Dr.

Stevens.  Her physical examination findings were largely the same, though in May of 2013 Plaintiff complained of pain in her right hip and that she was experiencing a functional decrease because her pain symptoms were increasing within the past month.  AR 638-44; 645-51; 652-57. On August 14, 2013, Plaintiff again saw Dr. Stevens. Plaintiff complained of pain in her right hip.  The examination notes were largely the same as before, and summarized as follows: that Plaintiff has a chronic pain syndrome, with cervical spinal stenosis and cervical radiculopathy, she has low back pain on the right greater than the left along with right leg raiduclar pain in an L5/S1 distribution along with associated parasthesias.  He also restated her MRI findings of mild facet anthropathy but no stenosis to explain her right leg radicular pain and parathesias.  He also restated her EMG/NCV findings that showed right L4-L5, L5-S1 radiculopathy.  AR 659-65.

### vi.  Diagnostic Studies

On July 16, 2010, an MRI of Plaintiff's lumbar spine was taken, which showed anatomic vertebral body alignment, no congenital or acquired spinal stenosis, no abnormal bone marrow signal, a benign focus of increased signal intensity involving the S1 segment of the sacrum, normal signal intensity of the conus, and normal appearance of the nerve rootlets below the conus.  AR 362-63.

On July 22, 2010, an MRI of Plaintiff's cervical spine was taken.  Impressions indicated no enhancement of any of the vertebrae to suggest any primary or metastatic bone lesions, the vertebral body heights are maintained showing small anterior osteophytes at C4-5 through C6-7, no enhancing lesions in the cervical cord or any syrinx, mild degenerative disc thinning of C4-5 and age-appropriate disc desiccation of the remaining cervical discs, mild right foraminal stenosis secondary to a lateral disc osteophyte complex at C4-5, small central and lateral disc bulge without stenosis at C5-6, and a right lateral disc bulge plus uncinated spurring, resulting in mild to moderate right foraminal stenosis without nerve root compromise at C6-7.  AR 360-61.

On February 1, 2012, an MRI was taken of Plaintiff's cervical spine.  The impression notes from the MRI report states there was normal signal and overall appearance of the

cervical vertebrae, stable small anterior osteophytes opposing C4-5 through C6-7, stable mild degenerative disc thinning at C4-5 and C6-7, and moderate to moderately severe right foraminal stenosis at C6-7 that showed mild interval worsening since July 22, 2010.  AR 470.

A lumbar spine MRI was taken on October 26, 2012.  Impressions indicated a symmetric disc bulge with bilateral facet anthropathy, resulting in mild bilateral lateral recess stenosis and minimal bilateral inferior neural foraminal narrowing.  The spinal canal and neural foramina were found to be otherwise adequate throughout.  AR 599-600.

On January 28, 2013, Plaintiff underwent a full body bone scan.  Impressions showed an increase in radiopharmaceutical concentration in the cervical spine, right shoulder, sacroiliac joints and right knee, commensurate with degenerative arthrosis (joint disease).  No scintigraphic abnormalities were found with the right hip, and there was also no scintigraphic evidence of osseous metastatic disease.  AR 549.

On May 31, 2013, electromyography and nerve conduction velocity testing (EMG/NCV) was performed of Plaintiff's right lower extremity.  The findings showed that all nerve conduction studies were within the normal limits.   Impressions from the testing showed mild chronic right L4-L5-S1 radiculopathy, and that there was no evidence of any other focal nerve entrapment, peripheral neuropathy, myopathy in the right lower limb.  AR 594.  Dr. Jacobo wrote a summary of the EMG and nerve conduction study.  He stated the study shows mild chronic right L4-L5, L5-S1 radiculopathy without an acute component.  He found no evidence of a peroneal neuropathy.  AR 597.

### vii.  Dr. Fareed's RFC Questionnaire

On October 14, 2013, Dr. Fareed completed an RFC questionnaire.  He reported Plaintiff's diagnoses as cervical spondylosis (changes in the area of the spine at the back of the neck), disc displacement, neuropathy (disorder affecting the nervous system), and sciatica (pain or discomfort associated with the sciatic nerve, which runs from the lower part of the spinal cord down the back of the leg to the foot).  AR 666.  Dr. Fareed opined that Plaintiff could rarely lift and carry less than 10 pounds and no weight greater than 10

8

pounds; sit for 15 minutes at a time and for about one hour in an eight-hour day; stand or walk for 15 minutes at a time and for about one hour in an eight-hour day; needed six to seven unscheduled breaks during an eight-hour day; could not use either hand for gross handling, grasping, turning, or twisting objects; could finger and reach for half an hour during an eight-hour day; and could rarely bend or stoop.  AR 666-67.  He opined that Plaintiff would have difficulty sustaining full time work due to chronic sciatica and a neck disc disorder.  AR 667.

### c.  Plaintiff's Testimony From The Hearing

The hearing was held via videoconference.  Plaintiff appeared at the hearing in El Centro, California and the ALJ presided over the hearing from Tucson, Arizona.  AR 104. An impartial vocational expert, Joy Yoshioka, M.S., also appeared at the hearing.  Id.

At the hearing before the ALJ, Plaintiff testified about her work history, which included positions as a restaurant owner, a construction supervisor, a cook supervisor, a cook, and as a cashier.  AR 34-35.  She testified she could no longer work as of June 1, 2009 because she was diagnosed with neuropathy in her feet, legs and hands, and because she has sciatic nerves on her right side.  AR 33.  Upon questioning by her counsel, Plaintiff testified she lays down about six to seven times per day due to her medications, cannot bend, and can only sometimes grip objects.  AR 38-39.

An impartial vocational expert, Joy Yoshioka, also testified at the hearing.  The ALJ posed a hypothetical as to whether a person could work the jobs Plaintiff previously performed with the following restrictions: sit six hours of an eight-hour day, stand six hours out of an eight-hour day, walk six hours out of an eight-hour day, can occasionally lift and carry 20 pounds, frequently lift and carry ten pounds and can occasionally climb stairs, never climb ladders, occasionally balance, stoop kneel, crouch and crawl and has limits on reach, gross handling and fine fingering and fine feeling.  AR 42.  Yoshioka opined that such a person could perform positions as a bartender, cashier and business owner positions. AR 42-43.  On cross-examination by Plaintiff's attorney, Yoshioka opined that if the hypothetical individual cannot sit or stand more than 15 minutes in an eight-hour day,

cannot lift more than ten pounds frequently or 20 pounds occasionally and needs to lie down for 20 minutes every two hours, then that individual could not perform any of the past relevant work Plaintiff did.  AR 44.  She also opined that an individual who cannot use fine manipulation more than 15 minutes an hour, who cannot stand more than 20 minutes in an hour and needs to lie down for half an hour every four hours could not perform any of the past relevant work that Plaintiff did.  AR 44-45.

### d.  The Sequential Evaluation Process

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months.  The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard.   20 C.F.R. § 404.1520(a).  The Ninth Circuit summarized the five-step sequential process for evaluating disability determinations as follows:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. [] If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing … and meets the duration requirement. [] If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. See id. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work.

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citations omitted); *see also Garrison v. Colvin,* 759 F.3d 995, 1010-1011 (9th Cir. 2014) (discussing the sequential process in greater length); *see also  Dominguez v. Colvin,* 808 F.3d 403 (9th Cir. 2015) (discussing sequential process under Title XVI).

### e.  The ALJ's Decision

On November 15, 2013, the ALJ issued a written decision.  AR 104-15.  The ALJ

found Plaintiff would need to establish disability by or before June 30, 2014, to be entitled to a period of disability and disability insurance benefits.  AR 104.  The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act from June 1, 2009 through the date of the decision.  AR 105.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 1, 2009.  AR 106.   At step 2, the ALJ found Plaintiff has impairments of degenerative disc disease and neuropathy in the hands, which are "severe" impairments as defined in the regulations.  AR 107.  At step 3, the ALJ determined Plaintiff's impairments were not of a severity to meet or medically equal the criteria of listed impairments.  Id.  The ALJ also found Plaintiff has the residual functional capacity to "perform light work as defined in 20 C.F.R. 404.1567b and 416.967(b); except, she could sit or stand and/or walk for six hours in an eight-hour workday."  The ALJ also found that "she could lift and carry twenty pounds occasionally and ten pounds frequently," and that "she could occasionally climb, balance, bend, stoop, kneel, crouch or crawl and frequently perform fine and gross manipulations."  Id.

In making these findings, the ALJ did not give treating physician Dr. Fareed's opinion controlling weight.  AR 111-12, *citing* 20 C.F.R. § 404.1527(d), 416.927(d) and SSR 96-2p.  The ALJ based this decision on a number of reasons.  Those reasons included that although Dr. Fareed assessed significant limitations in the physical RFC questionnaire, his treatment notes did not support such limitations; that Plaintiff's MRI scan showed her mild abnormalities were not worsening over time; that the pain management specialist's examination findings were not consistent with the extensive limitations assessed by Dr. Fareed; that in Plaintiff's follow-up examination with Dr. Fareed she did not complain of neck or back pain and her only complaints were gastrointestinal hemorrhage and blood clots in her stool; and that Dr. Fareed is a general practice physician who does not specialize in any orthopedics, neurology or pain management and thus would not be in the best position to assess Plaintiff's functional limitations.  AR 111-12.  Thus, the ALJ accorded less weight to Dr. Fareed's opinion.  Id.

The ALJ further noted that in determining Plaintiff's RFC she considered Plaintiff's allegations of her symptoms and functional limitations.  To the extent Plaintiff alleged she could not perform work at the RFC capacity stated by the ALJ, the ALJ found Plaintiff's allegations not totally credible as to the intensity, persistence and limiting effects for a number of reasons.  AR 112-13.  The ALJ noted a number of Plaintiff's activities of daily living which do not indicate a disabling level of impairment; that her treatment notes found her to be generally active and in satisfactory or normal health and her physical examination findings, MRI scans and EMG/NCV studies demonstrated it was not consistent with someone experiencing a disabling level of impairment; that no physician ever opined her impairments ever met or equaled a listing level limitation; and that her medical record does not establish impairments likely to produce disabling pain or other limitations for 12 or more continuous months.  AR 113.

At step 4, the ALJ found that Plaintiff is capable of performing her past relevant work as a bartender, business owner or as a cashier.  AR 113.  She noted this work does not require performing work-related activities precluded by her residual functional capacity.  Id.  The ALJ alternatively found Plaintiff could perform other jobs, which existed in significant numbers in the national economy.  AR 114-15.  The ALJ thus found Plaintiff was not under a disability as defined in the Social Security Act from January 1, 2009, through the date of her decision on November 15, 2013.  AR 115.

## III.  DISCUSSION

### a.  Assertion of Error

Plaintiff asserts the ALJ erred because she failed to articulate specific and legitimate reasons supported by substantial evidence for rejecting the treating physician's opinion. Dkt. No. 12 at 4.  She argues the goal of a treating physician is to treat their patient, and not take notes in preparation for litigation, and so the ALJ's justification for rejecting Dr. Fareed's opinion – which was based in part on grounds that his notes did not show all of Plaintiff's continued complaints – lacks specificity and legitimacy. (Dkt. No. 12 at 7.)  She also argues the ALJ mischaracterized the 2012 MRI findings as mild.  (Id.)  She also argues

that contrary to the ALJ's reasoning, the May 17, 2012 examination was abnormal, and progress notes from that physician show Plaintiff continues to deteriorate. (Id.) Plaintiff also contends the ALJ's argument that Dr. Fareed is not a specialist and thus is not accorded to more weight lacks merit as a specific and legitimate reason because there is no other functional opinion evidence from other specialists. (Id. at 8.) She also argues the ALJ should have requested supplemental testing and examination to the extent the ALJ found Dr. Fareed's treatment notes inconsistent with his opinions. (Id.) Finally, Plaintiff asserts that because the ALJ rejected the treating physician's opinion, all that was left was the non-examining physician's opinion, which "cannot by itself" constitute substantial evidence to justify rejecting an examining or treating physician's opinion. (Id. at 9.) Defendant disagrees with Plaintiff and contends the ALJ properly evaluated Dr. Fareed's opinion and accorded it little weight because it was inconsistent with his own progress notes, other medical evidence of record, and Plaintiff's own reports. (Dkt. No. 19-1 at 7, 8-12, 15.)

### b.  Legal Standard of Review

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Batson v. Comm'r of the Social Security Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citation omitted). If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Id.; Batson*, 359 F.3d at 1193. Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the agency. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The reviewing court cannot reinterpret or re-evaluate the evidence however much a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *See Batson*, 359 F.3d at 1193.

1
2

    c. **Whether The ALJ Provided Specific and Legitimate Reasons Supported by Substantial Evidence For Rejecting The Treating Physician's Opinion**

3
4
5
6
7
8
9
10

A treating physician's opinion is generally afforded "substantial weight." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009). However, "an ALJ need not give controlling weight to the opinion of a treating physician. 'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Batson*, 359 F.3d at 1194-95 (citation omitted). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Id., quoting Magallanes*, 881 F.2d at 751.

11
12
13
14
15
16
17
18
19
20
21
22
23
24

If an ALJ rejects a treating physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record for doing so. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (an ALJ must give specific, legitimate reasons based on substantial evidence for rejecting the opinion of a treating physician based in part on the testimony of a non-examining medical advisor); *Magallanes*, 881 F.2d at 752-53. The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 751-55. Additionally, when confronted with conflicting medical opinions, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and citation omitted)). Finally, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

25

    **i. Dr. Fareed's Treatment Notes**

26
27
28

First, Plaintiff argues the goal of a treating physician is to treat their patient, and not take notes in preparation for litigation. She argues the ALJ's justification for rejecting Dr. Fareed's opinion, which was based in part on grounds that his notes did not show all of

Plaintiff's continued complaints, therefore lacks specificity and legitimacy.  (Dkt. No. 12 at 7.)  Defendant contends that if Plaintiff had continuing severe problems, these should have been included in Dr. Fareed's progress notes and his treatment records should reflect her alleged problems and what was done to treat them.  (Dkt. No. 19-1 at 12.)  In support, Defendant argues Dr. Fareed's January 2013 and May 2013 notes do not contain any mention of complaints of neck or back pain or neuropathy, which formed the basis for his opinion that Plaintiff had severe limitations.  (Id., *citing* AR 577, 580, 666-67.)

Here, the ALJ's basis for rejecting Dr. Fareed's opinion on this ground is not a specific and legitimate reason.  The Ninth Circuit has explained that "[t]he primary function of medical records is to promote communication and record-keeping for health care personnel—not to provide evidence for disability determinations." *Orn v. Astrue,* 495 F.3d 625, 634 (9th Cir. 2007).  The Ninth Circuit concluded they "therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record." *Id.*  Indeed, one of the benefits of having "a stable treating relationship is to alleviate the need for the patient to repeat his full litany of complaints on each visit to the doctor." *Nelson v. Astrue*, 2012 U.S. Dist. LEXIS 48877, *26 (D. Or. 2012).

Additionally, the ALJ's reasoning failed to consider the January 2013 and May 2013 treatment notes within the context of the medical record as a whole. *Tommasetti,* 533 F.3d at 1041 ("The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b)"); *see also* 20 C.F.R. § 404.1527(c)(4) (in determining how much weight to afford the treating physician's medical opinion, factors include the consistency of the physician's opinion with the record as a whole).  Although Dr. Fareed's January and May 2013 notes do not contain indications of Plaintiff's relevant complaints, the record indicates that it was Dr. Fareed who referred Plaintiff to pain management specialist Dr. Stevens for treatment of these complaints (AR 506, 609), and that Dr. Stevens' examination notes throughout 2013 indicate continued complaints and diagnoses pertaining to neck pain, back pain and neuropathy, as well as what was done to try to treat them. *See e.g., supra*, § II.b.v.  It is

not surprising, then, that Plaintiff would describe these complaints in detail to the pain management specialist as opposed to Dr. Fareed. *Cf. Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1200 (9th Cir. 2008) (medical records are not inconsistent when claimant described symptoms with more detail to specialist than to general practitioner). Accordingly, the ALJ's reason for discounting Dr. Fareed's opinion on this basis is not a specific and legitimate reason supported by substantial evidence.

### ii. Characterization Of Diagnostic Study Findings

Next, Plaintiff argues the ALJ mischaracterized the 2012 MRI findings as mild. (Dkt. No. 12 at 7.)  The MRI report states there is "mild right foraminal stenosis" at C4-5, and "moderate to moderately severe right foraminal stenosis" at C6-7 that shows "mild interval worsening since 7/22/2010."  AR 470.

Although Plaintiff is correct that the MRI report states there was moderate to moderately severe formainal stenosis, the report also states it shows mild interval worsening.  AR 470.  The ALJ acknowledged both these findings of mild and moderate to moderately severe stenosis in the opinion (*see* AR 109), and also noted that the findings showed only mild interval worsening since July 22, 2010, which is consistent with the MRI report.  AR 111.  Accordingly, the Court disagrees with Plaintiff's assertion that the ALJ mischaracterized the evidence.

### iii. Progress Notes From Pain Management Specialist Dr. Stevens

Next, Plaintiff contends that contrary to the ALJ's reasoning, the May 17, 2012 examination by Dr. Stevens was abnormal, and more importantly, that Dr. Stevens' progress notes show Plaintiff continues to deteriorate.  Dkt. No. 12 at 7.  Defendant responds that the ALJ properly characterized Dr. Stevens' May 17, 2012 findings, and states that while Dr. Stevens' notes do show some reports of limited range of motion and positive Spurling's tests, it does not support the severe limitations Dr. Fareed assessed. (Dkt. No. 19-1 at 13.)  As explained below, the Court concludes the ALJ appropriately recounted Dr. Stevens' May 17, 2012 findings, but the ALJ's reasoning for rejecting Dr.

Fareed's opinion based on Dr. Stevens' findings did not account for the entire diagnostic picture presented by the rest of Dr. Stevens' findings from late 2012 through 2013.

As to the May 17, 2012 examination notes, Plaintiff contends they contain positive indications for joint pain, joint swelling, and neck pain. (Dkt. No. 12 at 7, *citing* AR 506.) These issues, however, are listed the Review of Systems section of the notes, which inventories the patient's subjective complaints and not the physician's findings. (*See* AR 506.) The ALJ properly described Dr. Steven's May 17, 2012 physical examination findings as having a normal heel and toe walk; normal and full forward flexion and left and right lateral flexion; a negative straight raise bilaterally; 5/5 strength in the bilateral upper extremities and a full range of motion of her bilateral upper extremities. (*See* AR 111-12; 506-07.) The ALJ's recounting of the May 17, 2012 examination findings was therefore not in error.

However, the ALJ's reasoning in relying on Dr. Stevens' findings as being inconsistent with Dr. Fareed's functional opinion does not reconcile with the entire diagnostic picture presented by Dr. Stevens' notes. *See Tommasetti*, 533 F.3d at 1041 ("The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b)"); *see also* 20 C.F.R. § 404.1527(c)(4). Indeed, although the ALJ justified her reasoning on the ground that Dr. Fareed's functional opinion was not consistent with Dr. Stevens' findings, the ALJ did not mention any of Dr. Stevens' extensive examination findings from November 2012, December 2012, January 2013, February 2013, April 2013, May 2013, June 2013 and August 2013. *See supra*, § II.b.v. Dr. Stevens' notes from October 2012 through August of 2013 contain complaints by Plaintiff of pain in her neck and back, as well as her upper and lower extremities. Those documents also contain examination findings that include spondylosis, chronic pain syndrome, radiculitis, degenerative disc disease, and stenosis. *See* id. Thus, the ALJ's reason for discounting Dr. Fareed's opinion on this basis is not supported by substantial evidence.

### iv.  The Factor That Treating Physician Dr. Fareed Is Not A Specialist

17

1    Plaintiff next contends the ALJ's reasoning that Dr. Fareed is not a specialist and

2    therefore his opinion is not accorded to more weight lacks merit because there is no other

3    functional opinion evidence in the record from other specialists.  (Dkt. No. 12 at 8.)

4    Defendant contends the ALJ properly considered Dr. Fareed's lack of specialization in

5    conjunction with the lack of consistency in his progress notes and other evidence, to

6    conclude that it weighed against affording his opinion greater weight.  (Dkt. No. 19-1.)

7    By regulation, the Commissioner "generally give[s] more weight to the opinion of a

8    specialist about medical issues related to his or her area of specialty than to the opinion of

9    a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).  The Court interprets this

10   regulation as evaluating the factor of whether or not the physician is a specialist in the area

11   upon which the opinion is rendered.  The Court does not read into the regulation a

12   requirement that other opinions from specialists must be in evidence to compare and afford

13   lesser weight to the source who is not a specialist.  *See e.g.*, *Garcia v. Colvin*, 2014 U.S.

14   Dist. LEXIS 607, *16 (E.D. Wash. Jan. 3, 2014) (where ALJ factored into evaluation that

15   the treating physician was not a specialist, the court concluded that "[w]hile this fact alone

16   is not a reason to reject his assessment, it is true that more weight generally is given to the

17   opinion of a specialist about issues within that specialist's area of expertise than to the

18   opinion of a source who is not a specialist," and that "is certainly a factor that the ALJ

19   could properly consider in affording less weight to that portion of his opinion.") (*citing* 20

20   C.F.R. § 404.1527(c)(5)).  As such, the ALJ properly considered this factor in her analysis

21   of what weight to assign to Dr. Fareed's opinion.

### v.   Failure To Order A Consultive Examination

23   Plaintiff also argues the ALJ should have requested supplemental testing and

24   examination to the extent the ALJ found Dr. Fareed's treatment notes inconsistent with his

25   opinions.  (Dkt. No. 12 at 8.)  Defendant contends the ALJ was not under a duty to order a

26   consultive examination under the circumstances presented by this case.  (Dkt. No. 19-1.)

27   The Commissioner has broad latitude in whether to order a consultive examination.

28   *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).  "Ambiguous evidence, or the ALJ's

own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) *quoting Smolen*, 80 F.3d at 1288.

The Court agrees with Defendant that the ALJ's disagreement with Dr. Fareed's opinion does not require ordering a consultive examination.  In this case, the ALJ found inconsistencies between Dr. Fareed's opinion in his questionnaire and his progress notes and other treatment notes.  AR 111.  Contrary to Plaintiff's contention, inconsistency does not equate to ambiguity.  Thus, although the ALJ found inconsistencies between Dr. Fareed's treatment notes and his opinion, this does not mean that the evidence in the record was ambiguous or that the record was inadequate to allow for proper evaluation. Furthermore, the record itself was neither ambiguous nor inadequate, and thus no duty was triggered to order a further consultive examination.  Accordingly, the ALJ did not err by failing to order a consultive examination.

### vi. Non-Examining Physician's Opinion

Lastly, Plaintiff asserts that because the ALJ rejected the treating physician's opinion, all that was left was the non-examining physician's opinion, which "cannot by itself" constitute substantial evidence to justify rejecting an examining or treating physician's opinion.  (Id. at 9.)  Defendant contends that the opinion of a non-examining physician may serve as substantial evidence where it is consistent with and supported by other evidence in the record.  (Dkt. No. 19-1 at 14.)

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).  A Commissioner's decision to reject the opinion of a treating or examining physician, however, may be upheld where it is based in part on the testimony of a nonexamining medical advisor.  *Id.* (*citing e.g. Magallanes*, 881 F.2d at 751-55*; Andrews,* 53 F.3d at 1043*; Roberts v. Shalala,* 66 F.3d 179 (9th Cir. 1995))*. Where the ALJ does not rely on a nonexamining physician's testimony *alone* to reject the treating physician's opinions, but rather also relies on an

abundance of other evidence in the record to also support the ALJ's decision, the rejection of the treating physician's opinion is adequately supported.  *See id.*

Here, the ALJ's decision to not assign controlling weight to Dr. Fareed's opinion was based only in part on the non-examining medical advisor's opinion.  The ALJ did not rely on the non-examining advisor's opinion alone as to Plaintiff's RFC; rather, the ALJ also cited numerous other evidence in the record, such as diagnostic studies and the conflicting testimony from Plaintiff, to support the decision.  As such, this argument by itself does not justify reversal.

However, as stated in the earlier portions of the Court's discussion regarding the ALJ's decision, some of the reasons the ALJ gave for discounting Dr. Fareed's testimony based on other evidence is not adequately supported by the record.  Accordingly, this Court concludes that the ALJ's denial of benefits is not supported by substantial evidence.

## IV.    REMEDY

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citation omitted).  The court may exercise its discretion and direct an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed."  *Id.* (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  *Id.* (citations omitted).

In this case, the Court finds that remand is appropriate because outstanding issues must be resolved before a determination can be made.  In particular, on remand, the ALJ should provide due consideration to Dr. Fareed's findings and opinions in light of the evidence from Dr. Stevens' examination notes and findings that span from October 2012 and forward.  *See* AR 601-665.

/

## V.    CONCLUSION

Accordingly, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED** and the case **REMANDED** for further administrative proceedings, and that Defendant's cross motion for summary judgment be **DENIED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  Any party may file written objections with the court and serve a copy on all parties on or before **February 1, 2016**. The document should be captioned "Objections to Report and Recommendation."  Any response to the objections shall be filed and served on or before **February 8, 2016**.   The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Baxter v. Sullivan,* 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  January 15, 2016

Hon. Nita L. Stormes
United States Magistrate Judge