UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN P. STIVERS,<br><br>                           Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                           Defendant. | Case No. 15-cv-270-BAS(NLS)<br><br>**ORDER:**<br><br>(1) **OVERRULING DEFENDANT'S OBJECTIONS;**<br><br>(2) **APPROVING AND ADOPTING REPORT AND RECOMMENDATION IN ITS ENTIRETY;**<br><br>(3) **GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>(4) **DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND**<br><br>(5) **REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[ECF Nos. 12, 19, 21, 22]** |

After receiving chemotherapy for breast cancer in 2008, Plaintiff Robin P. Stivers began suffering from numbness in her extremities, as well as lower back and leg pain. Plaintiff sought a disability determination from Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

//

After denial of her application, Plaintiff requested and participated in a hearing before an Administrative Law Judge ("ALJ").  The ALJ concluded that, although Plaintiff "has the following severe impairments: degenerative disc disease and neuropathy in the hands" which "causes significant limitation in the [Plaintiff's] ability to perform basic work activities," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (AR 106, 113, ECF No. 10.)  The ALJ concluded Plaintiff's impairments were not of a severity to meet or equal the criteria of listed impairments.  (AR 107.)

In making her decision, the ALJ rejected the opinion of Plaintiff's treating physician, Dr. Fareed, that Plaintiff was severely limited due to her cervical spondylosis, neuropathy, disc displacement and sciatica, and that she would have difficulty sustaining full-time work due to chronic sciatica and neck disc disorders. (AR 112-13, 666-67.)  Instead, the ALJ accepted the opinions of the agency's non-examining physicians that Plaintiff was capable of performing light work.  (AR 107.)

This Court agrees with United States Magistrate Judge Nita L. Stormes' Report and Recommendation ("R&R") that Plaintiff's Motion for Summary Judgment should be **GRANTED**, Defendant's Motion for Summary Judgment should be **DENIED**, and the case should be **REMANDED** for further proceedings.

I.  STATEMENT OF FACTS

  A.  Procedural History

Plaintiff filed concurrent applications for disability insurance benefits and supplemental security income.  (Compl. ¶ 6.)  Defendant denied the applications initially and upon reconsideration.  (*Id.*)  Plaintiff requested and participated in a hearing before an ALJ.  (*Id.* ¶ 7.)  The ALJ denied Plaintiff's claim for benefits.  (*Id.*)  Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (*Id.* ¶ 8.) The Appeals Council denied the request for review, at which time the ALJ's decision became the final decision.  (*Id.*)

Plaintiff now files this Complaint seeking a review of the final decision denying her application for benefits. (ECF No. 1.) Plaintiff filed a Motion for Summary Judgment (ECF No. 12), and Defendant filed a Cross Motion for Summary Judgment (ECF No. 19). On January 15, 2016, Judge Stormes issued an R&R recommending that Plaintiff's Motion for Summary Judgment be granted, Defendant's motion for cross-summary judgment be denied, and the case be remanded for additional proceedings. (ECF No. 21.) Defendant filed objections to this recommendation. (ECF No. 22.)

### B.     Plaintiff's Condition

This Court adopts the Statement of Facts outlining Plaintiff's medical history in the R&R (R&R 2:21-10:6), but adds the following overall summary. In the past, Plaintiff has worked as a cook, cook supervisor, cashier, and, most recently, a restaurant owner. (AR 34-35.) In 2008, she had chemotherapy for breast cancer, after which she began to experience numbness in her hands and feet, and sciatica, causing pain in her lower back and legs. (AR 33.) By June 1, 2009, Plaintiff testified, she could no longer work. (*Id.*) She was diagnosed with neuropathy in her feet, legs and hands, and sciatica. (*Id.*)

### C.     ALJ Decision

The ALJ issued a decision denying Plaintiff's requests for disability insurance benefits and supplemental security income. (AR 101-20.) The ALJ concluded that Plaintiff "has the following severe impairments: degenerative disc disease and neuropathy in the hands" which "causes significant limitation in the [Plaintiff's] ability to perform basic work activities." (AR 106.) The ALJ noted that Plaintiff's treating physician Dr. Fareed "opined that [Plaintiff] would frequently experience pain or other symptoms severe enough to interfere with her concentration, persistence and pace in performing work tasks." (AR 110.) Nonetheless, the ALJ concluded

"the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" like bartending, acting as a business owner or cashier. (AR 107.)

The ALJ discounted Dr. Fareed's opinion that:
> The [Plaintiff] could rarely lift and carry less than ten pounds and never more; . . . could sit or stand and/or walk in fifteen-minute intervals for about one hour in an eight-hour workday and would require a sit-stand at-will option and the ability to take unscheduled breaks during an eight-hour workday;…would have no use of either hand for gross handling, grasping, turning or twisting objects and would be limited to one-half hour with fine finger manipulation or reaching her arms in any direction, including overhead; . . . [and] could rarely bend or stoop and…would need to recline or lie down during an eight-hour workday due to chronic sciatica and neck disc disorders.

(AR 110-11, 666-67.) The ALJ found that this opinion was not entitled to "substantial persuasive weight" "due to inconsistencies in the record." Instead, the ALJ concluded that Petitioner "could sit or stand and/or walk for six hours in an eight-hour workday," "could lift and carry twenty pounds occasionally and ten pounds frequently," "could occasionally climb, balance, bend, stop, kneel, crouch or crawl and frequently perform fine and gross manipulations." (AR 107.)

The ALJ lists the following eight reasons for rejecting Dr. Fareed's opinion:

(1) Plaintiff reports doing household chores "such as vacuuming and mopping, driving a vehicle and weekly grocery shopping." (AR 112.)

(2) Dr. Fareed's notes from his June 22, 2009 exam fail to indicate "someone experiencing a disabling level of impairment." (*Id.*)

(3) Dr. Fareed's notes from his February 22, 2011 exam similarly failed to list Plaintiff's continuing complaints of a disabling level of impairment. (*Id.*)

(4) The February 1, 2012 MRI scan of plaintiff's cervical spine "revealed no more than some mild abnormalities at levels C4-5 through C6-7, and

|   |     |                                                                                                                         |
|---|-----|-------------------------------------------------------------------------------------------------------------------------|
|   |     | has shown only mild interval worsening since . . . July 22, 2010." (*Id.*)                                              |
|   | (5) | The October 29, 2012 MRI scan of Plaintiff's lumbar spine "showed only a 2mm symmetric disc bulge at the L4-5 level with bilateral facet arthopathy resulting in only mild bilateral recess stenosis and minimal bilateral inferior, neural foraminal narrowing; however, the spinal canal and neural foraminal were otherwise adequate throughout." (*Id.*) |
|   | (6) | "The EMG/NCV study performed on May 31, 2013, showed only mild chronic right L4-5 and L5-S1 radiculophy without an acute component and no evidence of peroneal neuropathy." (AR 112-13.) |
|   | (7) | No physician "ever opined that listing level limitations were ever met or equaled." (AR 113.)                           |
|   | (8) | "The objective evidence of the [plaintiff's] medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for any period of 12 or more continuous months." (*Id.*) |

The ALJ concluded that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, . . . the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 113.) The ALJ concluded Plaintiff is capable of performing her past work as a bartender, a business owner, or a cashier. (*Id.*)

### D. The R&R

The R&R recommends that this Court find the ALJ was incorrect when she discounted Dr. Fareed's treatment notes and when she rejected Dr. Fareed's opinion based on Dr. Stevens' findings. (ECF No. 21.) The R&R points out: (1) the primary function of medical records is not to provide evidence for disability determinations; (2) the ALJ's opinion failed to consider that Dr. Fareed referred Plaintiff to pain-

management specialist Dr. Stevens for treatment of her pain; and (3) the ALJ failed to consider Dr. Stevens' findings from late 2012 through 2013. (*Id.*) The R&R recommends this Court remand and that "on remand, the ALJ should provide due consideration to Dr. Fareed's findings and opinions in light of the evidence from Dr. Stevens' examination notes and findings that span from October 2012 and forward." (*Id.*)

## II. LEGAL STANDARD

The court reviews *de novo* those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1). It may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* But "[t]he statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia*, 328 F.3d at 1121. This rule of law is well-established within the Ninth Circuit and this district. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) ("Of course, de novo review of a R & R is only required when an objection is made to the R & R."); *Nelson v. Giurbino*, 395 F. Supp. 2d 946, 949 (S.D. Cal. 2005) (Lorenz, J.) (adopting report in its entirety without review because neither party filed objections to the report despite the opportunity to do so); *see also Nichols v. Logan*, 355 F. Supp. 2d 1155, 1157 (S.D. Cal. 2004) (Benitez, J.).

In the social-security context, the district court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is

supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the administrative law judge ("ALJ"). *See id.*; *Magallenes*, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1040.

## III. ANALYSIS

"The court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Generally the opinions of examining physicians are afforded more weight than those of non-examining physicians. *Id.* at 631; *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995) ("[M]ore weight is given to a treating physician's opinion . . . because a treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'"). Where the treating doctor's opinion is contradicted by another doctor, "the ALJ may not reject [the treating doctor's] opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn*, 495 F.3d at 632 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)) (internal quotation marks omitted). "The ALJ must do more than offer [her] conclusions. [Sh]e must set forth [her] own interpretations and explain why [hers], rather than the doctor's, are correct." *Id.*

"An ALJ may reject an examining [or treating] physician's opinion if it is contradicted by clinical evidence. But an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

> A finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors [listed by the Administration].

S.S.R. 96-2p at 4 (Cum. Ed. 1996) (available at 61 Fed. Reg. 34,490-91 (July 2, 1996)). Those factors include: (1) "the length of the treatment relationship and the frequency of examinations," (2) "the nature and extent of the treatment relationship," (3) "the amount of relevant evidence that supports the opinion," (4) "the consistency of the medical opinion with the record as a whole," (5) "the specialty of the physician providing the opinion," (6) "other factors such as the degree of understanding a physician has of the Administration's disability programs and evidentiary requirements and the degree of his or her familiarity with the information in the case record." 20 C.F.R. § 404.1527(c). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." S.S.R. 96-2p at 4.

In this case, Dr. Fareed was one of Plaintiff's treating physicians. He saw Plaintiff frequently from 2011 to 2013. Nonetheless, the ALJ rejected Plaintiff's treating physician's conclusions based on: (1) Plaintiff's self-report of housework; (2) Dr. Fareed's own notes; (3) the diagnostic tests; and (4) the ALJ's conclusion that the overall medical record doesn't "establish impairments likely to produce disabling pain or other limitations…for any period of 12 or more continuous months." (AR

112-13.)

Defendant objects to the R&R's recommendation for remand, arguing that the ALJ's reliance on the absence of documentation of debilitating impairment in Dr. Fareed's treatment and progress notes was only one of many factors for rejecting Dr. Fareed's opinion. (ECF No. 22.) Defendant argues that the ALJ also relied on other valid considerations in rejecting Dr. Fareed's opinion. (*Id.*) Hence, this Court examines each of the ALJ's stated reasons, other than those already addressed in the R&R.

### A. Plaintiff's Performance of Housework

Defendant objects first that the ALJ also bases her rejection of Dr. Fareed's opinion on Plaintiff's completion of an Exertion Questionnaire. (AR 227-230.) In that Questionnaire, the ALJ states that Plaintiff admits performing household chores, such as vacuuming and mopping, driving a vehicle, and weekly grocery shopping. (AR 112.) The ALJ overrepresents Plaintiff's admissions. In the Questionnaire, Plaintiff says, "I have pain in my feet and legs weakness. I have a hard time walking and the top of my toes are numb." "I cook, vac, mop, I have to sit down every 10 min. so it take me all day to do this thing." (AR 227.) She admits vacuuming and mopping only once a week, and says she has difficulty finishing. (AR 228.) Plaintiff indicates she drives to the grocery store 16 miles away but "it is very painful for me." (*Id.*) She always has a wheelchair to shop. (*Id.*) At the grocery store, she uses a powered wheelchair and it takes her hours because she has to stop to rest frequently. (*Id.*)

This hardly constitutes a contradiction of Dr. Fareed's ultimate opinion that "[Plaintiff] would frequently experience pain and or other symptoms severe enough to interfere with her concentration, persistence and pace in performing work tasks." (AR 666-67.) *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain

daily activities . . . does not in any way detract from her credibility as to her overall disability."); *Reddick*, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

### B. Dr. Fareed's Notes

Defendant argues the ALJ rejected Dr. Fareed's opinion, not only because he failed to note complaints of neck and back pain, but also because his observations: that her neck was supple, her musculoskeletal system was unremarkable and essentially unchanged, her back had no spot tenderness, her motor and sensory systems were intact and unchanged from before, and her gain and balance were normal, were inconsistent with his ultimate opinion that Plaintiff was disabled. (ECF No. 22.)

None of these observations directly contradict Dr. Fareed's ultimate opinion. The fact that a patient ambulates normally or seems to have no problems with her gait is not dispositive on whether she is in pain or able to stand for periods of time. Dr. Fareed never opined that Plaintiff was unable to walk at all. Instead, he concluded that she could not sit or stand for lengthy periods of time and would need to take frequent breaks to lie down. (AR 666-67.) He opined that she would have difficulty sustaining full-time work due to chronic sciatic and neck disc disorders. (AR 667.) These conclusions are not directly contradicted by his progress notes.

Furthermore, as the R&R points out, the ALJ's reasoning fails to consider Dr. Fareed's treatment notes within the context of the medical records as a whole. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Fareed referred Plaintiff to outside specialists to treat her complaints, many of whom did note confirmation of her problems. Neurologist Dr. Monis noted Plaintiff was "unable to touch her feet," had "limited extension and lateral rotation," "diminished reflexes" and "diminished pin prick and temperature sensation" in her lower extremities. (AR 382.) Surgeon Dr. Camberos noted significant peripheral neuropathy, which led him

to perform carpal-tunnel surgeries on Plaintiff's hands in 2011. (AR 398-451.) Pain-management specialist Dr. Stevens reflected diagnoses pertaining to neck pain, back pain and neuropathy throughout 2013, as well as what was done to try to treat them. (AR 506-09.) The fact that Dr. Fareed deferred to these medical specialists does not make his opinion any less valid.

### C. The Diagnostic Tests

Defendant objects that the ALJ also rejected Dr. Fareed's opinion based on three diagnostic tests.

On February 1, 2012, Plaintiff had an MRI of her cervical spine which showed, among other things "stable mild degenerative disc thinning at C4-t and C6-7 and moderate to moderately severe right foraminal stenosis at C6-7 that showed mild interval worsening since July 22, 2010." (AR 470.) On October 28, 2012, Plaintiff had an MRI on her lumbar spine. Impressions indicated a "symmetric disc bulge with bilateral facet anthropathy, resulting in mild bilateral lateral recess stenosis and minimal bilateral inferior neural foraminal narrowing." (AR 599-600.) Finally, on Mary 31, 2013, Plaintiff had an electromyography and nerve conduction velocity testing (EMG/NCV) which showed "mild chronic right L4-L5-Si radiculopathy." (AR 597.)

The ALJ apparently seizes on the words "mild" throughout these studies to conclude that the diagnostic tests do not support Dr. Fareed's conclusions that Plaintiff would have difficulty sustaining full time work. However, "[t]he ALJ must do more than offer [her] conclusions. [Sh]e must set forth [her] own interpretations and explain why [hers], rather than the doctor's, are correct." *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725). The ALJ's reliance on these diagnostic tests to discount Dr. Fareed's opinion is not a specific and legitimate reason for rejecting the treatment doctor's conclusion. In fact, each of the diagnostic tests support irregularities in Plaintiff's spine—"mild degenerative disc thinning," "moderate to

moderately severe…stenosis," "disc bulge" resulting in stenosis and minimal neural narrowing, "mild chronic…radiculopathy." The ALJ fails to indicate why these irregularities do not support Dr. Fareed's ultimate conclusion.

### D. Overall Record Does Not Establish Disabling Pain

Finally, the ALJ simply concluded that the overall medical record contradicts Dr. Fareed and doesn't "establish impairments likely to produce disabling pain or other limitations . . . for any period of 12 or more continuous months." (AR 113.) As noted above, this Court disagrees.

An ALJ may not reject a treating physician's opinion simply by questioning the credibility of a Plaintiff's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his or other specialist's observations. *See Ryan*, 528 F.3d at 1199-1200. Notably in this case, none of the many doctors and specialists treating or examining Plaintiff indicate any suspicion that Plaintiff may be malingering or "overstating the intensity, persistence or limiting effects" of her problems. The ALJ in this case failed to take into consideration the entire medical record, including the reports of the specialists and the fact that Dr. Fareed had a long treatment relationship with the Plaintiff and saw her frequently for her pain.

## IV. CONCLUSION & ORDER

Having conducted a *de novo* review of the R&R, the parties' cross-motions for summary judgment, and relevant portions of the administrative record, the Court concludes that Judge Stormes' reasoning is sound. Therefore, the Court **OVERRULES** the Defendant's objections, and hereby approves and **ADOPTS IN ITS ENTIRETY** the R&R. *See* 28 U.S.C. § 636(b)(1). Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's cross motion for summary judgment, and REMANDS this case for further administrative

1  proceedings.  On remand, the ALJ is directed to provide due consideration to Dr.
2  Fareed's findings and opinions in light of the entire medical record.
3     **IT IS SO ORDERED.**
4
5  DATED:  March 8, 2016
6                                                                    Hon. Cynthia Bashant
                                                                     United States District Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28